IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHRISTOPHER CHUNG, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. 1:19-cv-01746-PX |
| TOM L. SCHOLL, *et al.*, | * | |
| Defendants. | * | |

***

# MEMORANDUM OPINION

Pending before the Court is Defendants Tom L. Scholl's and Keystone Coal Co.'s ("Keystone") motion to dismiss. ECF No. 27. The Court finds no hearing is necessary. *See* Loc. R. 105.6. For the following reasons, the Court DENIES the motion to dismiss.[1]

## I.    Background

This action arises from an ongoing business relationship between parties who engaged in a series of discrete commodities-related contracts which, according to Plaintiffs, generated $14,600,000 in debts from four separate transactions that occurred between 1995 and 2012. ECF No. 3 ¶¶ 44, 46-63, 71, 79, 86.  The first deal concerns a 1995 exclusive agreement brokered with P.T. Adaro Indonesia ("Adaro") to sell Indonesian steam coal to Korea Electric Power Corporation ("KEPCO").  *Id.* ¶ 8.  Defendants hired Plaintiffs to negotiate and enter into the coal sales contract with Adaro on Defendants' behalf. *Id.* ¶¶ 4, 9.  Defendants agreed to pay Plaintiffs two-thirds of the profits from Adaro's annual coal sales to KEPCO.  *Id.* ¶ 10.  Based on ensuing negotiations, Plaintiffs secured on Defendants' behalf a Coal Sales Agreement between Adaro and KEPCO.  From May 1995 to early 2003, Defendants paid Plaintiffs two-thirds of the profits from the annual sale of at least two million tons of steam coal from Adaro to KEPCO.  *Id.*

---

[1] The original motion to dismiss (ECF No. 8) is denied as moot.

¶ 50.

However, in early 2003, both parties learned that Adaro was dealing directly with KEPCO in violation of the Coal Sales Agreement. ECF No. 3 ¶ 13. Defendants and Plaintiffs decided to approach Adaro to reach resolution regarding this circumvention and agreed that Plaintiffs would negotiate the Adaro matter in exchange for receiving a percentage of any settlement proceeds. Plaintiffs initiated the settlement discussions with Adaro, and at some point, Scholl took over negotiations to reach a specific settlement amount. *Id.* at ¶ 15. Scholl concluded the settlement discussions with Adaro and represented to Plaintiffs that the claim had been settled for $9 million. *Id.* ¶¶ 16, 22. In fact, unbeknownst to Plaintiffs, Scholl settled with Adaro for twelve million dollars. *Id.* ¶¶ 17, 56. Plaintiffs only learned in mid-2017 from a former Keystone employee about Scholl's deception. *Id.* ¶ 22.

The second deal occurred in 2010. Scholl sought Plaintiffs' assistance in securing a sales agreement with JFE Steel Corporation. *Id.* ¶ 81. Plaintiffs, once again acting on Defendants' behalf and pursuant to a written agreement, negotiated the sale of Japanese steel from JFE to POSCO (formerly known as Pohang Iron and Steel Company) in Phohang, South Korea. *Id.* As compensation for the deal, Defendants agreed to pay Plaintiffs approximately $7.00 per ton of JFE steel sold to POSCO. *Id.* Plaintiffs contend that they are owed $2.4 million on this deal. *Id.* ¶ 83, 84, 86.

Third, in July 2012, Plaintiff Christopher Chung assisted Scholl in securing a $35,000,000 business loan from ING. *Id.* ¶ 66. In exchange for Christopher securing the loan, Scholl agreed to pay Christopher $3,000,000 as payment. *Id.* ¶¶ 67-68. Despite having secured the loan for Scholl, Chung never received the agreed-upon compensation. *Id.* ¶ 83, 84, 86.

Fourth, the Parties agreed Plaintiffs would establish for Defendants' benefit an office in

Seoul, Korea in exchange for $1.2 million. *Id.* ¶ 76. Although Plaintiffs fulfilled their obligations under this agreement, they have not yet been compensated. *Id.* ¶¶ 77, 78.

On July 15, 2013, during a meeting between the Chungs and Scholl, Scholl admitted he owed Plaintiffs payment from the four above-described transactions and expressed his intent to reimburse Plaintiffs. *Id.* ¶ 24. The parties also memorialized, via written agreement dated July 15, 2013 ("2013 Agreement), the sums that Defendants owed Plaintiffs. *Id.*; ECF No. 3, Ex. 2. Scholl personally executed the 2013 Agreement. ECF No. 3, Ex. 2. Defendants, however, never repaid the monies owed.

Instead, between April 1, 2017 and August 20, 2018, Scholl conveyed to Plaintiffs on several occasions his plan to pay the debts outlined in the 2013 Agreement. ECF No. 3 ¶¶ 24–31. But once again, Scholl reneged on his promises, prompting Plaintiffs to file suit on March 27, 2019 in Montgomery County Circuit Court. ECF No. 3 at 1. The Defendants noted timely removal and now move to dismiss all claims as barred by limitations. ECF No. 27.

**II.    Standard of Review**

A motion to dismiss brought pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). The Court accepts "the well-pled allegations of the complaint as true," and construes all facts and reasonable inferences most favorably to the plaintiff. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "'[N]aked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility

3

of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557). "[C]onclusory statements or 'a formulaic recitation of the elements of a cause of action will not [suffice].'" *EEOC v. Performance Food Grp., Inc.*, 16 F. Supp. 3d 584, 588 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555).

Although limitations usually constitutes an affirmative defense, where the bar to suit "is apparent on the face of the complaint," the complaint does not sufficiently "state a claim upon which relief can be granted." *G & H Clearing & Landscaping v. Whitworth,* 66 Md. App. 348, 354 (1986). In that circumstance, the Court may dismiss the claim on limitations grounds. *See Brooks v. City of Winston–Salem, N.C.*, 85 F.3d 178, 181 (4th Cir. 1996) ("[D]ismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense.") (citation omitted); 5B Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1357 (3d ed. 2004) ("A complaint showing that the governing statute of limitations has run on the claim is the most common situation in which the affirmative defense appears on the face of the pleading," rendering dismissal appropriate).

### III. Discussion

#### A. Statute of Limitations for Plaintiffs' Breach of Contract Counts

It is undisputed that Plaintiffs' breach of contract claims, (Counts 1, 3, 4, and 5) are subject to a three-year statute of limitations. ECF No. 27-2 at 5–7. Defendants argue that dismissal is warranted because Plaintiffs were on notice of the breach by July 15, 2013 at the latest, when the parties mutually acknowledged the debts stemming from the breaches in the 2013 Agreement. *Id.* at 8, 9. Plaintiffs contend that Defendants' subsequent repeated assurances that the debts would be paid extended the limitations period into 2019, thus rendering these claims timely filed. ECF No. 28 at 8. At this stage of the proceedings, the Court agrees with

Plaintiffs.

Generally, a breach of contract claim begins to accrue at the time of the breach. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 465 (4th Cir. 2007). However, because a time barred contract claim "does not extinguish the debt; it bars the remedy only," Maryland law has long recognized that subsequent acknowledgement of a debt otherwise barred by limitations removes the bar to pursuing the remedy. *Jenkins v. Karlton*, 329 Md. 510, 531 (1993) (citing *Frank v. Warheim,* 179 Md. 59, 65 (1940)). An acknowledgement of the debt restarts the limitations clock as of the date of acknowledgment. *Id.*

To satisfy the acknowledgement of the debt exception, the debtor must admit an "obligation to pay the debt." *Developers Sur. v. Brantly Dev. Grp., Inc.*, No. CV JFM-15-3465, 2016 WL 5868550, at *8 (D. Md. Oct. 6, 2016) (citing *Columbia Ass'n, Inc. v. Poteet*, 199 Md. App. 537, 560 (2011)). Although the admission must be "clear, distinct, and unqualified." *Doughty v. Bayne*, 222 Md. 361, 365 (1960) (citations omitted), the debtor "need not expressly admit the debt" nor "express[ly] promise to pay a debt." *Jenkins*, 329 Md. at 531. Rather the admission "need only be consistent with the existence of the debt." *Id.* "Just as an express promise to pay a debt barred by limitations revives the remedy, 'a mere acknowledgement of such a debt will remove the bar of the statute, because if the debtor acknowledges the debt it is implied that he promises to pay.'" *Id.* (quoting *McMahan v. Dorchester Fert. Co.,* 184 Md. 155, 157 (1944)).

Viewing the Complaint allegations as true and most favorably to Plaintiffs, the Court easily concludes that Defendants' acknowledgment of the debt was sufficient to render the current claims timely filed. On April 1, 2017, Scholl met with Plaintiffs and conveyed his intent to pay the debts outlined in the 2013 Agreement. ECF No. 3 ¶¶ 24, 25. Scholl more particularly

5

agreed he would pay them the following month.  *Id.* ¶ 26.  On June 3, 2017, Scholl again reiterated his promise to pay, and specified that he would do so from proceeds of an imminent real estate deal, and for that very reason, asked Plaintiffs for their forebearance in taking legal action.  *Id. ¶* 27.  Scholl then provided only partial payment of $50,000 on July 20, 2017, *id.* ¶ 28, while shortly thereafter representing to Christopher Chung that he would pay him the three million dollars owed for ING deal.  *Id.* ¶ 69.  Then, on October 20, 2018, Scholl again assured Plaintiffs that he would pay his outstanding debt from the proceeds of yet another deal.  *Id.* ¶ 30.  When Scholl again failed to pay, Plaintiffs filed suit six months later, on March 27, 2019 and well within three years after the last time Scholl acknowledged the debts.  At this stage in the case, the claims will proceed.  Should Defendants generate facts sufficient to demonstrate no acknowledgement of the debt they are free to raise this limitations argument at the summary judgment stage.

**B. Statute of Limitations for Plaintiffs' Fraud Count**

Defendants next argue that the fraud claim too is time-barred.  ECF No. 27-2 at 10.  In Maryland, the statute of limitations for claims sounding in fraud is three years.  *See* Md. Code. Ann., Cts. & Jud. Proc. § 5–101; *Parker v. Am. Brokers Conduit*, 179 F. Supp. 3d 509, 518 (D. Md. 2016).  However, "[i]f the knowledge of a cause of action is kept from a party by the fraud of an adverse party, the cause of action shall be deemed to accrue at the time when the party discovered, or by the exercise of ordinary diligence should have discovered the fraud."  Md. Code. Ann., Cts. & Jud. Proc. § 5–203; *see also Dual Inc. v. Lockheed Martin Corp.,* 383 Md. 151, 170 (2004) ("Maryland law recognizes that it is unfair to impart knowledge of a tort when a potential plaintiff is unable to discover the existence of a claim due to fraud or concealment on the part of the defendant.").  If a plaintiff wishes to rely on the fraudulent concealment doctrine,

the complaint must include "specific allegations of how the fraud kept the plaintiff in ignorance of a cause of action, how the fraud was discovered, and why there was a delay in discovering the fraud, despite the plaintiff's diligence." *Dual*, 383 Md. 151 at 170 (citing *Doe v. Archdiocese of Washington,* 114 Md. App. 169, 187 (1997)).

Plaintiffs' fraud claim centers on Defendants' false representation that the Adaro matter settled for far less than it actually did. ECF No. 3 ¶¶ 50–63. Defendants contend the claim is time barred because Plaintiffs have not specifically alleged any facts to support a delay in filing the claim, especially because Plaintiffs, as sophisticated negotiators of multi-million-dollar coal sales agreements, would most likely have investigated the actual amount of this settlement. ECF No. 27-2 at 11.

Plaintiffs have alleged sufficient facts by which their protracted ignorance and late discovery are plausibly inferred. According to the Complaint, the parties agreed that Scholl assumed sole responsibility for the latter part of negotiations with Adaro and reached a specific settlement amount. ECF No 3 ¶ 15. Scholl then communicated to Plaintiffs, his partners in the Adaro venture, that the settlement figure was $9,000,000, and gave Plaintiffs no reason to question his representation at the time. *Id.* ¶ 16. Plaintiffs did not learn the true settlement amount until a former Keystone employee in 2017 told them about it. ECF No. ¶ 22. When viewed in the light most favorable to Plaintiffs, sufficient facts allow the plausible inference that Defendants' active deception prevented Plaintiffs from learning of the fraud until mid-2017. Further, the Complaint does not allege any facts supporting the inference that Plaintiffs could or should have learned about the true settlement amount through the exercise of due diligence. Thus, the fraud claim is not time barred. However, like the contract claim, if facts adduced at discovery demonstrate otherwise, Defendants are free to raise the limitations defense in the

future.

## IV. Conclusion

For the foregoing reasons, the Court denies Defendants' motion to dismiss. A separate order follows.

| | |
|---|---|
| 9/26/2019 | /S/ |
| Date | Paula Xinis |
| | United States District Judge |